JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERALUZ GRAMAJO BARRIOS, an individual,<br>Plaintiff,<br>v.<br>CITY OF LOS ANGELES, a Government entity; LOS ANGELES WORLD AIPRORTS, a government entity; CONCESIONARIA VUELA COMPANIA DE AVIACION, SAPI DE CV D/B/A VOLARIS, a California corporation; and DOES 1 through 20, inclusive,<br>Defendants. | Case No.: 2:25-cv-11959-MEMF-AJR<br>**ORDER GRANTING MOTION TO REMAND [DKT. NO. 10]** |

Before the Court is a Motion to Remand filed by Plaintiff Veraluz Gramajo. Dkt. No. 10 ("Motion"). For the reasons stated herein, the Motion is GRANTED.

/ / /

/ / /

## I. Background

### A. Factual Background[1]

This incident occurred on January 21, 2024, at or around the premises of Los Angeles International Airport ("LAX"). The Defendants are the City of Los Angeles, Los Angeles World Airports, and Volaris (the airline that Barrios was traveling on. Dkt. No. 1, Ex. A ("1AC") ¶¶ 2-5. On the day in question, Plaintiff Veraluz Gramajo Barrios was being transferred from Defendants' motorized golf cart into a wheelchair. *Id.* ¶¶ 8-9. The golf cart had a rail on the side to prevent handicapped passengers from falling off, but the rail was not properly secured. *Id.* ¶ 9. When a representative instructed Barrios to get off the cart, Barrios tripped over the unsecured rail and fell forward, sustaining injuries. *Id.*

### B. Procedural History

On February 13, 2025, Barrios filed a complaint in Los Angeles County Superior Court against Defendants City of Los Angeles, Los Angeles World Airports ("LAWA"), Concesionaria Vuela Compania De Aviacion, Sapi De CV D/B/A Volaris ("Volaris"), and Does 1 through 20 (collectively, "Defendants"). Dkt. No. 1 ("NOR") at 1. On June 30, 2025, Barrios filed a First Amended Complaint against Defendants alleging claims of (1) negligence and (2) premises liability. *See* 1AC. On December 18, 2025, Defendants filed a notice of removal to this Court. *See generally* NOR. On January 16, 2026, Barrios filed a Motion to Remand.[2] *See generally* Dkt. No. 10 ("Motion"). On February 13, 2026, Defendants filed an Opposition to the Motion. *See* Dkt. No. 12 ("Opposition"). On February 17, 2026, Defendants filed a Motion for Leave to File a Late

---

[1] Except as otherwise indicated, the following factual background is derived from Barrios's Complaint. 1AC. The Court includes these allegations only as background and makes no finding on whether they are true.

[2] Defendants contend that Barrios's Motion is premature because she filed it less than seven days after the parties met and confer regarding the contemplated Motion. Motion at 6. Local Rule 7-3 states that a meet and confer conference "must take place . . . at least 7 days prior to the filing of the motion." C.D. Cal. L.R. 7-3. Barrios did not file a Reply and therefore has not contested this argument; the Court finds that there was not a meet and confer at least seven days prior to the filing of this Motion. But because the parties did substantively meet and confer, *see* Gomez. Decl. ¶ 3, Dkt. No. 10, and the Court prefers to resolve matters on the merits, the Court will consider Barrios's Motion. Barrios's counsel is admonished for the failure to comply with Local Rule 7-3; any subsequent failure to comply in a future motion may result in an order to show cause regarding sanctions.

Opposition. Dkt. No. 13 ("Motion for Leave"). On March 3, 2026, Barrios filed an Opposition to the Motion for Leave. Dkt. No. 16. On March 4, 2026, Barrios filed an Ex Parte Application for an Order to Advance the Hearing Date on Defendants' Motion for Leave to File a Late Opposition. Dkt. No. 17 ("Application"). On March 5, 2025, the Court granted the Application and set the hearing on the Motion for Leave as the same date and time as the hearing on the Motion to Remand. Dkt. No. 18. On March 10, 2025, Defendants filed a Reply to the Motion for Leave. Dkt. No. 19. The Court found this matter appropriate for resolution without oral argument and vacated the hearing set for March 19, 2026. *See* Dkt. No. 20; Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II. Applicable Law

A defendant may remove a state action to federal court if the federal court would have original subject matter jurisdiction over the action. 28 U.S.C. § 1441. Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Removal of a state action may be based on diversity or federal question jurisdiction. *City of Chi. v. Int'l Coll. of Surgeons,* 522 U.S. 156, 163 (1997). A defendant who removes a case from state court bears the burden of establishing federal jurisdiction. *Abrego Abrego v. The Dow Chem. Co.,* 443 F.3d 676, 682 (9th Cir. 2006). Failure to satisfy this burden militates remand. *Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.,* 346 F.3d 1190, 1192 (9th Cir. 2003) (internal citations omitted).

When determining whether an action involves a federal question, "a [district] court applies the well-pleaded complaint rule." *Moore-Thomas v. Ala. Airlines, Inc.,* 553 F.3d 1241, 1243 (9th Cir. 2009) (internal citations and quotations omitted). That rule provides that a federal question exists only when a "federal question is presented on the face of the plaintiff's properly pleaded complaint." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 947 (9th Cir. 2014) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (internal quotation marks omitted)). A "plaintiff can generally 'avoid federal jurisdiction by exclusive reliance on state law.'" *City of Oakland v. BP PLC,* 969 F.3d 895, 904 (9th Cir. 2020) (quoting *Caterpillar,* 482 U.S. at 392). "[U]nder the artful pleading rule 'a plaintiff may not defeat removal by omitting to plead

necessary federal questions in a complaint.'" *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124 (9th Cir. 2010) (quoting *ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality of Montana*, 213 F.3d 1108, 1114 (9th Cir. 2000)).

The federal jurisdiction question at issue arises over whether this incident falls under the scope of the Montreal Agreement in the Warsaw Convention (referred to as the "Montreal Convention"). "The Montreal Agreement, not a treaty itself but an agreement among the carriers, did not change the text of the Warsaw Convention. Rather, it modified the terms of the Convention with respect to international transportation involving a location in the United States." *Maugnie v. Compagnie Nationale Air France*, 549 F.2d 1256, 1259 (9th Cir. 1977). Article 17 of the Montreal Convention states: "The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45, 1999 WL 33292734 (entered into force Nov. 4, 2003) (referred to as the "Montreal Convention").

The Convention does not include solely psychic or psychosomatic injury as grounds for recovery under the term of "injury" in the Convention. *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng,* 525 U.S. 155, 661 (1999) (citing *Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 552 (1991)). "Whether a passenger is embarking or disembarking is a question of federal law to be decided on the facts of each case." *Schmidkunz v. Scandinavian Airlines Sys.*, 628 F.2d 1205, 1207 (9th Cir. 1980) (citing *Maugnie*, 549 F.2d at 1256-62). "[A] rule based solely on location of passengers is not in keeping with modern air transportation technology." *Maugnie,* 549 F.2d at 1261. The Ninth Circuit "prefer[s] an approach which requires an assessment of the total circumstances surrounding a passenger's injuries," and "[l]ocation of the passenger is but one of several factors to be considered." *Id.* at 1262. Other factors to consider are the plaintiff's activity and whether the carrier was in control of the plaintiff. *See id.* at 1261-62.

/ / /

/ / /

## III. Discussion

Barrios moves to remand this case to the state court on the grounds that her claims do not fall under the Montreal Convention since she was not in the process of disembarking from the aircraft when the incident occurred. Motion at 1. Defendants contend that given all the relevant factors, Barrios *was* disembarking when she was injured, so this case does fall under the Montreal Convention, and this Court may assert federal question jurisdiction. Opposition at 3. For the reasons discussed below, the Court finds that the Defendants have not established that the Montreal Convention applies or that any other ground for federal jurisdiction exists—and grants the Motion to Remand.

### A. Defendants' Motion for Leave shall be granted.

Defendants contend that their Motion for Leave to File a Late Opposition should be granted because there is excusable neglect since (1) Barrios will not suffer any prejudice, (2) the delay was brief and would not impact the proceedings, (3) the delay was based on an inadvertent reliance on Local Rule 7-9 amid family emergencies, and (4) Defendants acted in good faith. *See* Motion for Leave at 3-6. Barrios contends that there is no excusable neglect because (1) Barrios will be prejudiced if this Motion for Leave is granted, (2) the delay has and will continue to impact these proceedings, and (3) the delay was within Defendants' control, and any "calendaring error [does not turn] into excusable neglect" due to Defendants' counsel's large firm. *See* Dkt. No. 16 at 4-6. For the reasons discussed below, the Court finds that there is excusable neglect, and the Court will allow Defendants to file this late Opposition.

Federal Rule of Civil Procedure 6(b)(1)(B) states that: "When an act may or must be done within a specified time, the court may, for good cause, extend the time: on motion made after the time has expired if the party failed to act because of *excusable neglect*." Fed. R. Civ. P. 6(b)(1)(B) (emphasis added). This rule is to "be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258-59 (9th Cir. 2010) (quoting *Rodgers v. Watt*, 722 F.2d 456, 459 (9th Cir. 1983) (internal quotation marks omitted)). "To determine whether a party's failure to meet a deadline constitutes 'excusable neglect,' courts must apply a four-factor equitable test, examining: (1) the danger of prejudice to the opposing

party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Id.* at 1261 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993)). The Court addresses each factor below.

First, there is very little prejudice to Barrios. Thirty-four days prior to the hearing date, Defendants concurrently filed and served the Opposition that they would file if this Motion for Leave were granted, *see* Motion for Leave at 2, 4, 4 n.3, which still allowed Barrios the one-week timeframe under the Civil Standing Order to "Reply to Defendants' Opposition in spite of Defendants' late Opposition," *see id.* at 2; Civil Standing Order § VIII(B). Thus, Barrios had ample opportunity to file a Reply prior to the hearing, so the hearing or any other trial date would not be impacted. *See* Motion for Leave at 4.

Barrios contends that she is prejudiced by this Motion for Leave because the Motion to Remand would likely have to "be pushed out for almost another month" due to the April 2 noticed hearing date for this Motion for Leave, and the Court would also have to set a new briefing schedule to allow Barrios to Reply to Defendants' Opposition. *See* Dkt. No. 16 at 4. But as discussed above, Defendants concurrently filed and served their proposed Opposition with this Motion for Leave on February 13, 2026, to "avoid any potential prejudice to [Barrios]," and Defendants noted in this Motion for Leave that they would be moving to advance the hearing date. *See* Motion for Leave at 1, 4 n.3; *see also* Dkt. No. 17. Barrios thus had the necessary amount of time to file a Reply before the hearing on the Motion to Remand, but she did not file a Reply. And given Defendants' Ex Parte Application, *see* Dkt. No. 13 at 4 n.3; Dkt. No. 17, there was no indication that the Court would have needed to push back the hearing and briefing for the Motion to Remand to address this Motion for Leave. Accordingly, the Court finds there is little prejudice to Barrios, so this factor weighs in favor of granting the Motion for Leave.

Second, the length of the delay was not long. Defendants promptly filed their proposed Opposition a week after Barrios filed a Notice of Non-Opposition, which was four-days before they filed their Motion for Leave. *See* Dkt. Nos. 11-13. This gave Barrios plenty of time to file a proper Reply under this Court's Civil Standing Order before the March 19, 2026, hearing. *See* Civil Standing Order § VIII(B). Barrios relies on the same hypothetical arguments as it does for the first

factor to rebut this second factor, but as discussed above, Defendants' delay did not prevent Barrios from filing a Reply in time for a March 19 hearing. *See* Dkt. No. 16 at 5. Any delay in filing a late Opposition would not have impacted the proceedings, so this factor weighs in favor of Defendants. *See* Motion for Leave at 4.

Third, the reason for the delay weighs in favor of Barrios. Although Defendants' delay was due to an inadvertent reliance on Local Rule 7-9, *see* Motion for Leave at 5, Defendants were referred to this Court's Civil Standing Order on January 9, 2026, Dkt. No. 8, so there was no justification for this mistake. And while Defendants' counsel's medical family emergency is serious, *see* Motion for Leave at 5, Defendants are represented by a large law firm, Lewis Brisbois Bisgaard & Smith LLP, with two other attorneys on this matter, so the firm should have the capacity to handle an emergency of this nature, *see* Dkt. No. 16 at 6. Accordingly, the third factor weighs in favor of Barrios and in denying the Motion for Leave.

Finally, the Court finds that Defendants acted in good faith. Defendants promptly filed their proposed Opposition a week after the Notice of Non-Opposition was filed and days before they filed this Motion for Leave "in an effort to avoid any potential prejudice to [Barrios] and for the convenience of this Court." Motion for Leave at 1. As discussed above, this gave Barrios enough time to file a Reply to the Opposition before the March 19 hearing, and therefore it does not appear that it was calculated to harm Barrios. Barrios did not address this factor in her Opposition to this Motion for Leave. *See* Dkt. No. 16 at 4-6. Accordingly, the Court finds this factor weighs in favor of Defendants.

In sum, because three of the four factors weigh in favor of Defendants, the Court will grant the Motion for Leave to file a Late Opposition.

**B. Federal question jurisdiction does not exist.**

i. <u>Defendants rely on documents outside Barrios's operative complaint.</u>

Barrios argues that Defendants rely on documents outside of her operative complaint to contend that the Montreal Convention applies, because Defendants reference communications between counsel, specifically: (1) a pre-suit letter that suggests the incident occurred five minutes before the immigration point, and (2) Barrios's boarding pass for an international flight from

Guatemala. *See* Motion at 5; NOR ¶ 10. Defendants argue that even without this material, the facts in Barrios's original complaint are enough to warrant a federal question because "she was within the control of Defendants and was in the disembarkation process thereby triggering the Montreal Convention." Opposition at 6. This Court finds that these documents cannot be used as support to satisfy Defendants' burden to prove removal.

"[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement *of his own cause of action* shows that it is based upon those laws or that Constitution." *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152 (1908) (emphasis added). Additionally, a federal question exists only when a "federal question is presented *on the face of* the plaintiff's properly pleaded complaint." *Retail Prop. Tr.,* 768 F.3d at 947 (internal quotation marks omitted) (emphasis added). Given that Defendants relied on material outside Barrios's complaint, the Court will disregard this material when determining whether a federal question exists.

ii. Defendants cannot establish that the Montreal Convention applies to Barrios's incident under the operative complaint.

*1. The Court must consider additional factors outside of location in deciding whether Barrios was in the process of disembarking within the meaning of the Montreal Convention.*

First, initially at issue is what factors to weigh to determine whether Barrios was in the process of disembarking. The Montreal Convention applies to all international air transportation.[3] *See Maugnie*, 549 F.2d at 1258; *El Al Israel Airlines, Ltd.*, 525 U.S. at 169. The Convention also discusses three phases during which injury can occur to qualify within its scope: ". . . on board the aircraft . . . embarking or disembarking." Montreal Convention at Art. 17. The 1AC only states that Barrios was at the airport being transported on or about LAX's premises in Los Angeles, California on January 21, 2024. 1AC at ¶¶ 8-9. Defendants claim that Barrios was in the process of "disembarking," thus placing her claims within the scope of the Montreal Convention. Opposition at

[3] The parties do not appear to dispute that Barrios was on an international flight. *See generally* Motion; Opposition. Although Barrios does not explicitly mention that she flew on an international flight in her 1AC, *see* 1AC ¶¶ 8-10, her flight was on Volaris, an international carrier, 1AC ¶ 4. *See* Volaris, *About Volaris*, VOLARIS, https://cms.volaris.com/en/travel-info/about-volaris/ (last visited Mar. 4, 2026) (describing that Volaris primarily flies internationally).

3. Defendants contend that Barrios is mistaken in thinking that because she was no longer on the plane when the incident occurred that this means she was not "disembarking." *Id.* at 4. Defendants argue that more factors beyond simply location should be considered in determining whether Barrios was disembarking. *Id.* This Court agrees.

The Ninth Circuit in *Maugnie* has indicated that a strict-location based test is not appropriate. 549 F.2d at 1261. "[W]e find that a rule based solely on location of passengers is not in keeping with modern air transportation technology. . . ." *Id.* Rather, location is one of many factors to be considered in totality when determining whether the incident falls under the scope of the Montreal Convention. *Id.* at 1262.

> [S]ince the Convention drafters did not draw a clear line, this Court is also reluctant to formulate an inflexible approach. Rather, we prefer an approach which requires an assessment of the total circumstances surrounding a passenger's injuries, viewed against the background of the intended meaning of Article 17. Location of the passenger is but one of several factors to be considered.

*Id.* The 9th Circuit looked to *Day v. Trans World Airlines, Inc.*, 528 F.2d 31, (2d Cir. 1975) and *Evangelinos v. Trans World Airlines, Inc.*, 550 F.2d 152, (3d Cir. 1977) to support its analysis that courts should look to more than just location to determine whether a passenger was in the process of disembarking under the Montreal Convention. *Id.* In both cases, the Second and Third Circuits applied a three-factor test weighing: (1) location, (2) control, and (3) activity, to determine whether the passenger was embarking or disembarking. *See Day v. Trans World Airlines, Inc.*, 528 F.2d 31, 33 (2d Cir. 1975); *Evangelinos v. Trans World Airlines, Inc.*, 550 F.2d 152, 155 (3d Cir. 1977). This, this Court shall follow the holding in *Maugnie* and look to (1) location, (2) control (that is, at whose direction—the *carrier* or not), and (3) activity, to determine whether Barrios was in the process of disembarking to have her claim fall within the scope of the Convention. 549 F.2d at 1262.

*2. Barrios's location indicates that she was not in the process of disembarking from the aircraft.*

Barrios argues that "her injuries occurred well after she had finished disembarking from the aircraft and outside any activity remotely connected to air carriage. At the time of the incident, [Barrios] had already reached the furthest point of ground transport, was transferring from the golfcart into a wheelchair." Motion at 4. Defendants initially cite Barrios's pre-suit letter, which this

Court will ignore due to it being outside of the scope of the Complaint. Opposition at 4. Later, Defendants argue that even if this letter were disregarded, Barrios is still under the control and supervision of the airline. *Id.* at 6. This Court finds that based on the allegations set forth in the 1AC, the incident's location does not indicate it occurred during disembarkation.

In her Complaint, Barrios says the incident occurred at the airport while transferring from a golf cart to a wheelchair. 1AC ¶ 9. There is no mention of deplaning or exiting the aircraft. In *Maugnie*, the Court found that a passenger who slipped and fell as she proceeded down a passenger corridor leaving from the carrier's gate to the main area of an airline terminal was not in the process of disembarking. 549 F.2d at 1257. Similarly, Barrios was in the process of "being transported," "[w]hile at the airport. . . ." 1AC ¶ 9. Barrios does not allege facts regarding her location (besides being in the airport) to indicate she was embarking, disembarking, or on the plane. Therefore, Barrios's location does not fall within the scope of the Montreal Convention.

*3. Barrios was not under the control of the carrier.*

The next factor this Court will examine is whether Barrios was under the control of the Volaris or rather "acting at her own direction." *Maugnie*, 549 F.2d at 1262. For the reasons below, this Court finds that Barrios was not under the control of Volaris.

In her 1AC, Barrios alleges that she was injured when "instructed to get off the cart by the representative," and that "[b]ased on their respective agencies, ownership, . . . directions, supervision and/or basic, general, and specific operations of the GOLF CART and subject premises as the location of the subject incident identified herein, Defendants . . . owed a duty of care to [Barrios]." 1AC ¶¶ 9-10. Barrios argues that she "was not on board the craft, was not exiting the aircraft and was not under the carrier's control" but rather "engag[ing] in post-arrival terminal movement governed by ground operations." Motion at 4. Defendants contend that "[Barrios] had not exited the controlled environment of the airport, had not regained independent mobility, and had not reached a place outside of Defendants' operational control." Opposition at 2. And "[a]t no time after Plaintiff deplaned was she able to venture throughout the airport freely. . ." since "she was transported on a designated route. . . ." *Id.* Based solely on the alleged facts of the 1AC, Barrios was not under the control and supervision of Volaris.

In *Maugnie*, the Court held that the appellant had deplaned and was heading to her connecting flight at the time of injury and was "acting at her own direction and was no longer under the 'control'" of the airline. 549 F.2d at 1262. Like the passenger in *Maugnie*, Barrios had already deplaned and was moving through the airport and transferring between two methods of transportation when she was injured. Although she was doing so at the instruction of a "representative," 1AC ¶ 9, the 1AC does not allege that she was *under the control of* the representative, and even if she was, that it was the *carrier's* representative, as opposed to the other Defendants, *see id.* ¶¶ 9-10. Accordingly, the 1AC does not indicate Barrios was involved in the process of disembarking from the aircraft under the *carrier's* control.

*4. The factual allegations do not establish that the nature of Barrios's activity comprises part of the process of disembarkation.*

Finally, this Court will examine the activity factor. Defendants mention that Barrios was on the way to the immigration checkpoint when she was transferring between the golf cart and the wheelchair. Opposition at 2. However, this information was not alleged in the 1AC and thus will be disregarded. Therefore, the 1AC—which only alleges that she was transferring from a cart to a wheelchair—does not support a finding that Barrios was engaged in an activity that constitutes disembarkation.

In sum, assessing the totality of circumstances, including the location, control, and activity of Barrios by Defendants, Defendants have failed to establish that Barrios was in the process of disembarking and thus the Montreal Convention applies.

Accordingly, in the absence of the application of the Montreal Convention, the Defendants have failed to establish that this Court has jurisdiction over this action.

/ / /

/ / /

/ / /

/ / /

/ / /

**IV. Conclusion**

For the reasons stated herein, Plaintiff's Motion is GRANTED. The Case is REMANDED to the Superior Court of California for the County of Los Angeles.

IT IS SO ORDERED.

Dated: August 25, 2026

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge